UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA, | ) |   |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 3:22-cr-00340-1 |
| MAHAN JANBAKHSH, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Ron Janbakhsh, David Raybin, Michael Abelow, Christian Quiroz, Paul Bruno, and Steven Piper have filed motions to quash Federal Rule of Criminal Procedure 17(c) subpoenas to produce documents issued by Defendant Mahan "Mark" Janbakhsh.[1] (See Doc. Nos. 189, 230-1, 198, 208, 225, 226, 229). These motions are fully briefed and ripe for decision. (See Doc. Nos. 190, 192, 240–45, 255, 247, 249, 259, 260–61, 264).[2] Janbakhsh also filed motions to compel subpoena productions from Diego Cifuentes and Steve Winchester. (Doc. Nos. 268, 269).

Given that trial is set to begin on July 22, 2025, the Court writes only for the movants and parties and will not reiterate the factual or procedural background of this case. For the following reasons, the motions to quash the document subpoenas will be granted, and Janbakhsh's motions to compel compliance will be denied.

---

[1] The Court will consider and dispose of the Motion to Quash Trial Subpoena Directed to David Raybin (Doc. No. 230-1) by separate Order.

[2] The Court has decided, as a matter of discretion, to grant Ron Janbakhsh's motion for leave to file excess pages, and to consider the reply brief attached to his motion. (See Doc. No. 247).

I.     **LEGAL STANDARD**

Federal Rule of Criminal Procedure 17(c)(1) authorizes the issuance of a subpoena to "order the witness to produce any books, papers, documents, or data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c)(1). The Supreme Court and Sixth Circuit have repeatedly emphasized that a Rule 17(c) subpoena "is not meant to provide an additional way to secure pretrial discovery." United States v. Llanez-Garcia, 735 F.3d 484, 494 (6th Cir. 2013); see also Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951). Instead, "its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." United States v. Nixon, 418 U.S. 683, 698–99 (1974).

The Court may quash or modify a Rule 17(c) subpoena if compliance would be "unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2); see also Llanez-Garcia, 735 F.3d at 493–94. Consistent with Rule 17(c)'s limited purpose, courts have interpreted the "unreasonable or oppressive" standard to mean that parties may use "Rule 17(c) subpoenas [only] to obtain documents if (1) the items are evidentiary and relevant; (2) the items are not otherwise procurable through due diligence prior to trial; (3) the party cannot properly prepare for trial without such pre-trial production and inspection; and (4) the application is made in good faith and is not a fishing expedition." United States v. Vassar, 346 F. App'x 17, 24 (6th Cir. 2009) (citing Nixon, 418 U.S. at 699). The Supreme Court in Nixon held that the principles behind this four-factor test mean that the party who served the subpoena "must show that the sought-after documents meet three requirements: (1) relevancy; (2) admissibility; and (3) specificity." United States v. Miller, 2024 WL 3760328, at *4 (6th Cir. Aug. 12, 2024) (quoting Nixon, 418 U.S. at 700) (internal quotation marks and alterations omitted).

The decision of whether to enforce or quash a Rule 17(c) subpoena is "committed to the sound discretion of the trial court[.]" Nixon, 418 U.S. at 1145.

**II.    THE SUBPOENAS**

The motions to quash are directed at the following substantive requests in Janbakhsh's Rule 17(c) subpoenas.

    A.    <u>Subpoena to Mehran "Ron" Janbakhsh, dated May 21, 2025 – (Doc. No. 190-6)</u>

        1.    All communications and documents regarding the forensic extraction of data from any electronic device ever belonging to Ron, including any related communications with third parties concerning the extraction.

        2.    All communications and documents relating to or discussing any digital recordings Ron made of Mark Janbakhsh, including any subsequent handling or use of these recordings and any related communications with third parties.

        3.    All communications made in the course and scope of your representation of Ron between You and:

            a. The United States Attorney Office;

            b. The Department of Justice;

            c. Probation and Pretrial Services Office.

    B.    <u>Subpoena to Mike Abelow, dated May 21, 2025 – Doc. No. 198-1</u>

        1.    All communications and documents regarding the forensic extraction of data from any electronic device ever belonging to Ron, including any related communications with third parties concerning the extraction.

        2.    All communications and documents relating to or discussing any digital recordings Ron made of Mark Janbakhsh, including any subsequent handling or use of these recordings and any related communications with third parties.

        3.    All communications made in the course and scope of your representation of Ron between You and:

            a. The United States Attorney Office;

            b. The Department of Justice;

            c. Probation and Pretrial Services Office.

C. <u>Subpoena to Paul Bruno, dated June 11, 2025 – (Doc. No. 229-1)</u>

1. All communications between You and the Government in this case.

2. All documents and communications provided to you by the Government in this case.

3. All documents and communications you provided the Government in this case.

D. <u>Subpoena to Steven Piper, dated June 11, 2025 – (Doc. No. 229-2)</u>

1. All documents and communications related to Auto Masters from January 1, 2017, to the present.

2. All communications between you and the Government about the allegations in this case.

3. All documents provided by you to the Government in this case.

4. All communications between you and Ron Janbakhsh, Christian Quiroz, Mark Janbakhsh from January 1, 2016, to the present.

5. Documents sufficient to show all entities in which you currently hold a business interest or have held such an interest within the last ten (10) years.

E. <u>Subpoena to Christian Quiroz, dated May 21, 2025 – (Doc. No. 208-1)</u>

1. All communications between You and:

a. Ron Janbakhsh;

b. Diego Cifuentes; or

c. Steve Winchester.

2. All documents relating to the Companies including but not limited to operating agreements, articles of incorporation, banking records, financial records, or documents showing your role or ownership interest.

3. All documents and communications relating to your immigration status.

4. All records of payments, transfers of money, or other financial transactions between You and:

a. The Companies;

b. Ron Janbakhsh;

c. Diego Cifuentes;

d. Steve Winchester;

e. Auto Masters.

5. All communications between You and:

a. The United States Attorney Office;

b. The Department of Justice;

c. The Probation and Pretrial Services Office.

F. <u>Subpoena to Christian Quiroz, dated June 6, 2025 – (Doc. No. 225-1)</u>

1. All documents and communications reflecting travel plans or arrangements you made in 2022.

2. All documents and communications reflecting your efforts or plans to travel in 2022.

3. All documents and communications about payments made for travel in 2022.

4. All documents sufficient to show any payments you made to attorneys for legal representation in 2022.

G. <u>Subpoena to Luke Evans, dated June 6, 2025 – (Doc. No. 226-1)</u>

1. Documents sufficient to show any payments received from Christian Quiroz, excluding any payments from the CJA panel.

Janbakhsh's motions to compel compliance are directed at the following substantive requests in his Rule 17(c) subpoenas.

A. <u>Subpoena to Diego Cifuentes, dated May 21, 2025 – (Doc. No. 268-1)</u>

1. All communications between You and Ron Janbakhsh, Christian Quiroz, or Steve Winchester regarding:

a. The Companies;

b. The creation, formation, or conducting of any business or business activity in Florida.

2. All organizational documents for HWY 90 MOTORS, LLC (Florida Document #L17000119403), including but not limited to: articles of organization, operating agreements, amendments, member or manager agreements, meeting minutes, membership certificates, transfer records, payroll receipts, and employee and customer lists.

3. All banking records for HWY 90 MOTORS, LLC since January 1, 2017 to present, including but not limited to:

  a. All bank statements.

  b. All deposit slips and records of deposits.

  c. All check registers, canceled checks, and images of checks.

  d. All wire transfer confirmations and instructions.

  e. All records of electronic funds transfers.

  f. All signature cards and bank resolutions.

4. All financial records for HWY 90 MOTORS, LLC since January 1, 2017, to present, including but not limited to:

  a. General ledgers and accounting records.

  b. Profit and loss statements.

  c. Balance sheets.

  d. Tax returns and supporting documentation.

  e. Financial statements.

  f. Vehicle inventory with VINs.

5. All documents and communications related to the formation, capitalization, and funding of The Companies.

6. All documents, communications, applications, agreements, and records related to any loans or lines of credit obtained by or for the benefit of HWY 90 MOTORS, LLC, including:

  a. Credit applications and supporting documentation.

  b. Financing agreements.

  c. Security agreements.

  d. Personal guarantees.

  e. Records of disbursements and payments.

  f. Communications with the financing provider.

7. All documents, communications, and records related to any other business entities you own, operate, have an interest in, or received payments from, that conduct business in Florida from January 2017, to present.

8. All documents evidencing your owner ship interest and/or management role in the Companies.

9. All records of payments, transfers of money, or other financial transactions between:

   a. You and the Companies.

   b. Ron Janbakhsh and the Companies.

   c. Steve Winchester and the Companies.

   d. You and Ron Janbakhsh related to the Florida business activities.

   e. You and Steve Winchester related to the Florida business activities.

   f. Ron Janbakhsh and Steve Winchester related to Florida business activities.

10. All documents, records, and communications relating to your knowledge of, involvement with, or interest in any Florida business entities, including but not limited to:

    a. The Companies.

    b. Any other active or dissolved Florida business entities owned, operated, controlled by Ron Janbakhsh, or that have employed or paid money to Ron Janbakhsh.

B. <u>Subpoena to Steven Winchester, dated June 26, 2025 – (Doc. No. 269-2)</u>

   1. All communications between You and Ron Janbakhsh, Christian Quiroz, or Diego Cifuentes regarding:

      a. The Companies;

      b. The creation, formation, or conducting of any business or business activity in Florida.

   2. All organizational documents for HWY 90 MOTORS, LLC, including but not limited to: articles of organization, operating agreements, amendments, member or manager agreements, meeting minutes, membership certificates, transfer records, payroll receipts, and employee and customer lists.

   3. All banking records for HWY 90 MOTORS, LLC since January 1, 2017 to present, including but not limited to:

      a. All bank statements.

      b. All deposit slips and records of deposits.

      c. All check registers, canceled checks, and images of checks.

      d. All wire transfer confirmations and instructions.

e. All records of electronic funds transfers.

f. All signature cards and bank resolutions.

4. All financial records for HWY 90 MOTORS, LLC since January 1, 2017, to present, including but not limited to:

   a. General ledgers and accounting records.

   b. Profit and loss statements.

   c. Balance sheets.

   d. Tax returns and supporting documentation.

   e. Financial statements.

   f. Vehicle inventory with VINs.

5. All documents and communications related to the formation, capitalization, and funding of The Companies.

6. All documents, communications, applications, agreements, and records related to any loans or lines of credit obtained by or for the benefit of HWY 90 MOTORS, LLC, including:

   a. Credit applications and supporting documentation.

   b. Financing agreements.

   c. Security agreements.

   d. Personal guarantees.

   e. Records of disbursements and payments.

   f. Communications with the financing provider.

7. All documents, communications, and records related to any other business entities you own, operate, have an interest in, or received payments from, that conduct business in Florida from January 2017, to present.

8. All documents evidencing your owner ship interest and/or management role in the Companies.

9. All records of payments, transfers of money, or other financial transactions between:

   a. You and the Companies.

   b. Ron Janbakhsh and the Companies.

   c. Diego Cifuentes and the Companies.

        d. You and Ron Janbakhsh.

        e. You and Diego Cifuentes.

        f. Ron Janbakhsh and Diego Cifuentes related to Florida business activities.

10. All documents, records, and communications relating to your knowledge of, involvement with, or interest in any Florida business entities, including but not limited to:

        a. The Companies.

        b. Any other active or dissolved Florida business entities owned, operated, controlled by Ron Janbakhsh, or that have employed or paid money to Ron Janbakhsh.

## III. DISCUSSION

### A. Motions to Quash Rule 17(c) Subpoenas

As an initial procedural matter, Janbakhsh argues that the Court should deny the motions to quash because movants' counsel did not meet and confer with him to resolve their objections, as required by Local Criminal Rule 12.01(d). The Court is not aware of any cases in this district (and Janbakhsh does not cite any) in which a court denied a motion to quash a Rule 17(c) subpoena because a *nonparty* or *former* co-defendant failed to meet and confer with the defendant. There are also conflicting accounts in the record regarding whether any of the movants did, in fact, try to meet and confer with Janbakhsh before seeking relief from the Court. (See Doc. No. 264 at 1 n.1). The Court has little reason to believe that any further meet and confers would be productive at this point. Thus, as a matter of discretion, the Court will consider the motions to quash without further inquiring about whether each movant strictly complied with Local Rule 12.01(d).

Turning to substance, the Court finds that Janbakhsh failed to carry his burden to satisfy the Nixon factors in his Rule 17(c) document subpoenas. First, none of his requests meet Nixon's requirement that a Rule 17(c) subpoena must identify and describe the requested materials in the subpoena with sufficient specificity. Nixon, 418 U.S. at 700. This specificity requirement prevents parties from using a Rule 17(c) subpoena as a "fishing expedition to see what may turn

up, and is often the most difficult hurdle to overcome." United States v. Bell, 336 F.R.D. 148, 151 (E.D. Mich. 2020) (citations and internal quotation marks omitted). Where, as here, the party who issued the subpoena "cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes something useful will turn up, the requirement of specificity will not have been met." United States v. Tucker, 249 F.R.D. 58, 62–63 (S.D.N.Y. 2008).

Janbakhsh's subpoena requests primarily fail to satisfy Nixon's specificity requirement because they each seek "all communications" or "all documents" about various topics. Some of the more egregious examples of these impermissibly broad requests include Janbakhsh's request for "all communications between [Quiroz] and" various individuals without any limit to subject matter or a specific time frame; and his request to Piper for "all documents and communications related to Auto Masters from January 1, 2017, to the present." (See Doc. Nos. 208-1 at 8; 229-2 at 9). It is well settled that "[s]ubpoenas seeking any and all materials, without mention of specific admissible evidence, justify the inference that the defense is engaging in the type of fishing expedition prohibited by Nixon." United States v. Medinueta-Ibarro, 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013) (internal quotation marks omitted); United States v. Penn, 2022 WL 408245, at *2 (D. Colo. Feb. 10, 2022 (applying same inference to requests seeking "documents sufficient to show" certain information); United States v. Mills, 2019 WL 76869, at *5 (E.D. Mich. Jan. 2, 2019) (collecting cases); United States v. Indivior Inc., 2020 WL 616167, at *3 (W.D. Va. Feb. 10, 2020). To rebut this inference, Janbakhsh "must be able to reasonably specify the information . . . believed to be contained in the documents sought rather than merely hop[e] that something useful will turn up." United States v. Shah, 2022 WL 1284550, at *1 (S.D.N.Y. 2022) (citations and internal quotation marks omitted). Janbakhsh's vague and overbroad requests come nowhere

near satisfying this test. Accordingly, the Court finds that Janbakhsh's requests are so broad and nonspecific that their inclusion in a Rule 17(c) subpoena is nothing more than an improper attempt to obtain criminal discovery.

Aside from Janbakhsh's general failure to satisfy the Nixon specificity requirement, many of his requests fail for other specificity related reasons. For example, the subpoenas issued to Ron Janbakhsh, Abelow, Bruno, Piper, and Quiroz demand "all communications" with the United States Attorney Office, the Department of Justice, Probation and Pretrial Services Office, and the Government in general. Courts have held that nearly identical Rule 17(c) requests "clearly indicat[e] that Defendant seeks to obtain information helpful to the defense by examining large quantities of documents, rather than for its intended purpose—to secure the production for a court proceeding of specific admissible evidence." United States v. Menendez, 2024 WL 2801960, at *2 (S.D.N.Y. May 31, 2024) (citations and internal quotation marks omitted); Shah, 2022 WL 1284550, at *2. "Compliance with such broad demands is 'unreasonable or oppressive' under Rule 17(c)" because they "plainly fail[] to satisfy the specificity requirement set forth in Nixon." Menendez, 2024 WL 2801960, at *2.

Relatedly, the subpoenas issued to Bruno and Piper demand "all documents and communications provided to you" and "all documents and communications you provided the Government in this case." (Doc. Nos. 229-1 at 5; 229-2 at 5). "Such materials—if they exist—are almost surely in possession of the government and available through Rule 16." Menendez, 2024 WL 2801960, at *2; United States v. Maxwell, 2021 WL 1625392, at *2 (S.D.N.Y. Apr. 27, 2021). So, in addition to not being specific, these requests do "not comply with Nixon's requirement that the materials must not be otherwise procurable reasonably in advance of trial by

the exercise of due diligence." Menendez, 2024 WL 2801960, at *2; Maxwell, 2021 WL 1625392, at *2.

Janbakhsh argues that he needs his requested materials because Ron Janbakhsh, Quiroz, and Piper and are key Government cooperators who have pled guilty to the fraud scheme. (See Doc. Nos. 240 at 15–16; 243 at 1–2; 255 at 2). Assuming Janbakhsh is correct that these individuals will testify against him at trial, their prior statements to the Government would constitute Jencks Act material—which the Government already agreed to produce two weeks before trial. Menendez, 2024 WL 2801960, at *2. On the other hand, if these requested materials are not subject to the Jencks Act or "are *not* otherwise discoverable under Rule 16, they are not appropriate subjects for a Rule 17 subpoena." Id. Janbakhsh "may not subpoena a co-defendant or related party to make an end-run around the discovery limitations of Rule 16." United States v. Arias, 373 F. Supp. 2d 311, 313 (S.D.N.Y. 2005); Shah, 2022 WL 1284550, at *2.

Although the Court could grant the motions to quash solely because Janbakhsh fails to satisfy Nixon's specificity requirement, the Court also has concerns about whether Janbakhsh has made a sufficient preliminary showing of relevancy and admissibility. As to relevancy, Janbakhsh's response briefs suggest that he is merely speculating about what his requested documents and information may show. He argues that "[t]he requested documents of Ron [Janbakhsh] are highly relevant and necessary for Defendant's effort to prove that Ron (rather than Mark) actually committed the charged conduct in this case," but he does not provide any additional details for why he believes the documents will actually support this theory. (See Doc. No. 240 at 17). He then makes the same general arguments with respect to Quiroz and Piper. (Doc. Nos. 243 at 2–3; 255 at 2). A defendant "cannot establish the facts necessary to satisfy the" Nixon relevancy prong "through hope, conjecture, or speculation." Indivior Inc., 2020 WL 616167, at *4 (citations

and internal quotation marks omitted); United States v. Peterson, 2022 WL 9914428, at *3 (E.D. Mich. Oct. 17, 2022) (collecting cases and holding that Defendant did not satisfy the "specificity requirement" because his "requests are based merely on [his] or his counsel's hope or speculation that something useful will turn up").

Janbakhsh also maintains that certain information is relevant to "effectively challenge" witnesses' "credibility and motives" when they testify. (See Doc. No. 243 at 2). It is black letter law that a party may not use a Rule 17(c) subpoena "for evidence to impeach witnesses." Nixon, 418 U.S. at 701; United States v. Hughes, 895 F.2d 1135, 1146 (6th Cir. 1990). Curiously, however, Janbakhsh admits that he seeks "documents related to [Quiroz's] immigration status" because they constitute "classic and highly relevant *impeachment* material" that "bear on the witness's potential bias and motive to testify favorably for the Government in exchange for a benefit." (Id. at 7–8 (emphasis added). Janbakhsh also concedes that his requests towards Ron Janbakhsh, Bruno, and Piper also seek impeachment material. (Doc. Nos. 240 at 15; 255 at 7). These requests are improper under Rule 17(c).

It is also unclear how Janbakhsh's requested materials would themselves be admissible at trial. His requests for "all communications" involving nonparties necessarily would include hearsay material, and "Rule 17(c) subpoenas cannot be used to obtain documents that would be excluded on hearsay grounds[.]" United States v. Underwood, 2019 WL 5078351, at *3 (D.S.C. Oct. 10, 2019) (citing United States v. Brown, 1995 WL 387698, at *10 (S.D.N.Y. June 30, 1995)). Janbakhsh's improper attempts to seek impeachment material also fail to satisfy Nixon's admissibility prong because "[c]ourts have consistently interpreted the admissibility standard of Rule 17(c) to preclude production of materials whose evidentiary use is limited to impeachment." United States v. Peterson, 2022 WL 9914428, at *3 (E.D. Mich. Oct. 17, 2022). Indeed, it is

13

Case 3:22-cr-00340    Document 275    Filed 07/03/25    Page 13 of 16 PageID #: 3902

unclear how "all documents and communications" involving Quiroz's travel plans or "efforts" to travel in 2022 would be admissible other than for impeachment. (Doc. No. 225-1 at 4–5).

In any event, Janbakhsh's requests are not specific enough under Nixon to permit the Court to fully assess their relevance or admissibility. See Indivior Inc., 2020 WL 616167, at *5 (W.D. Va. Feb. 10, 2020). Given Janbakhsh's clear failure to satisfy the specificity prong, it would not be an efficient use of judicial resources to spend more time explaining (in dicta) whether his requests additionally fail under the relevancy and admissibility prongs.[3] What matters for present purposes is that *none* of Janbakhsh's requests satisfy the Nixon specificity standard for the issuance of a Rule 17(c) subpoena.

B. Motions to Compel Compliance with Rule 17(c) Subpoenas

The Court previously granted Janbakhsh's motion for early return of documents pursuant to subpoenas issued to Diego Cifuentes, Steve Winchester, and others. (Doc. Nos. 174, 177). Janbakhsh asserts that he served the subpoenas on Cifuentes and Winchester, but that neither of them have responded. (Doc. Nos. 268, 269). As a result, Janbakhsh has moved to compel Cifuentes and Winchester to comply with his subpoenas. (Doc. Nos. 268, 269). Neither Cifuentes nor Winchester have responded to his motion.

At the time the Court granted Janbakhsh's motion, it did not have the benefit of reviewing "Attachment A" to those subpoenas. (See Doc. No. 174-2). Janbakhsh has now provided "Attachment A" to the Cifuentes and Winchester Subpoenas. (Doc. Nos. 268-1 at 5–8; 269-2 at 5–8). Having now reviewed those substantive requests, the Court finds that Janbakhsh's Rule 17(c) subpoenas to Cifuentes and Winchester also fail to satisfy the Nixon standard. See United

---

[3] For these reasons, the Court also declines Janbakhsh's odd invitation to "file an *ex parte* supplemental response" "regarding the relevancy of the records sought by" his subpoenas. See, e.g., Doc. No. 245 at 7).

States v. Beckford, 964 F. Supp. 1010, 1028 (E.D. Va. 1997) (citation omitted) (holding that the "court needs no assistance [from the opposing party] in applying the Nixon standard"); Mills, 2019 WL 76869, at *4.

The Court's reasoning above for granting the motions to quash applies with equal force to denying the motions to compel compliance. Janbakhsh seeks from Cifuentes and Winchester "all communications" or "all documents" involving various financial and business records from January 2017 to present (or, in some cases, without any time frame limitation). These overly broad requests plainly fail Nixon's specificity test because Janbakhsh has not reasonably specified "the information contained or believed to be contained in the documents sought," and it appears that he "merely hopes something useful will turn up." Tucker, 249 F.R.D. at 62–63. Without more, Janbakhsh has not rebutted the inference that his requests constitute "the type of fishing expedition prohibited by Nixon." Medinueta-Ibarro, 956 F. Supp. 2d at 513. And again, this lack of specificity does not allow the Court to fully assess the relevance or admissibility of Janbakhsh's requested documents. See Indivior Inc., 2020 WL 616167, at *5.

Accordingly, the Court will deny Janbakhsh's motions to compel compliance because his Rule 17(c) subpoena requests to Cifuentes and Winchester fail to satisfy the Nixon test.

### IV. CONCLUSION

For the foregoing reasons, the Court Orders as follows:

- The Motions to Quash filed by David Raybin and Ron Janbakhsh (Doc. No. 189); Michael Abelow (Doc. No. 198); Christian Quiroz (Doc. Nos. 208, 225); Luke Evans (Doc. No. 226); and Paul Bruno and Steven Piper (Doc. No. 229) are **GRANTED**.

- Janbakhsh's Motion to Compel Subpoena Production from Diego Cifuentes (Doc. No. 268) is **DENIED**.

- Janbakhsh's Motion to Compel Subpoena Production from Steve Winchester (Doc. No. 269) is **DENIED**.

- The Motion for Leave to File Excess Pages by Ron Janbakhsh (Doc. No. 247) is **GRANTED**.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE