# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. 3:22-cr-00340-1 |
| MAHAN JANBAKHSH, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Defendant Mahan Janbakhsh moves to reconsider the Court's July 3, 2025 Order (Doc. No. 275) granting several motions to quash Federal Rule of Criminal Procedure 17(c) subpoenas he issued to potential witnesses to produce documents ("Order").

The Court begins with the obvious—"[m]otions for reconsideration in . . . criminal cases are disfavored[.]" United States v. Michel, 2023 WL 7140000, at *1 (D.D.C. Mar. 1, 2023). Although the Federal Rules of Criminal Procedure do not provide for motions for reconsideration in criminal cases, courts adjudicating such motions typically evaluate them under the same standards applicable to a civil motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e). United States v. Johnson, 2019 WL 3231382, at *1 (M.D. Tenn. July 18, 2019) (citations, internal quotation marks, and alterations omitted); see also United States v. Cabrera, 699 F. Supp. 2d 35, 40 (D.D.C. 2010) (citations omitted). The Sixth Circuit has also held that a district court may exercise its discretion to grant a motion to alter or amend judgment under Rule 59(e) "if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." Id. (quoting Intera Corp. v. Henderson, 428 F.3d 605, 620 (6th Cir. 2005)). On the other hand, the Court should deny a motion to reconsider if it is being used as "an opportunity to re-argue a case," to "relitigate previously considered issues, to

submit evidence which could have been previously submitted in the exercise of reasonable diligence, or to attempt to obtain a reversal of a judgment by offering the same arguments previously presented." United States v. Tenn. Walking Horse Breeders' and Exhibitors' Assoc., 263 F. Supp. 3d 679, 681 (M.D. Tenn. 2017) (citation omitted).

Against the Rule 59(e) standard, Defendant asks the Court to reconsider its July 3, 2025 Order on the following five grounds: (1) the Court "invented" a "broad" exception to the meet-and-confer requirement in Local Criminal Rule 12.01(d) "that swallows the rule"; (2) "the Court applied Nixon's requirement so restrictively that it becomes nearly impossible for defendants to obtain relevant evidence"; (3) the Court did not properly distinguish the factors that "govern when documents must be produced *before trial*" from those that govern the "right to subpoena evidence *for trial*"; (4) the Court inadvertently failed to address a Rule 17(c) subpoena to Ron Janbakhsh; and (5) the Court should have modified, rather than quashed, any invalid subpoenas. (Doc. No. 296). The Court addresses each of these issues in order below.

First, the Court's Local Criminal Rules "have the force of law," but the Court has "discretion in choosing how to enforce them" in a way that will achieve the goals of Federal Rule of Criminal Procedure 2 "to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay." See Romine v. Uber Techs., Inc., 2017 WL 11494685, at *1 (E.D. Tenn. Jan. 23, 2017) (citations and internal quotation marks omitted); Valassis Commc'ns, Inc. v. Aetna Cas. & Sur. Co., 97 F.3d 870, 873 (6th Cir. 1996) (recognizing that "the district court is the final arbiter of its own local rules"). Here, the Court chose not to rigidly enforce the meet-and-confer requirement of Local Criminal Rule 12.01(d) because, under these circumstances, it would not be an efficient use of resources to either require further briefing or deny the motions to quash on

procedural grounds. The subpoena recipients and Defendant filed more than twenty briefs regarding the subpoenas already, and the lack of compromise reflected in those briefs gave the Court "little reason to believe" that pausing the proceedings and requiring "further meet and confers would be productive at this point." (Doc. No. 275 at 9). The Court did not, as Defendant suggests, "invent" a rule to encourage parties to refuse to meet and confer if *they* had little reason to believe that those meetings would be productive. (See Doc. No. 296 at 1, 5). Indeed, there are many scenarios in which it would make practical sense for the Court to deny a motion for failing to comply with Local Criminal Rule 12.01(d). But in this case, and under these circumstances, the Court used its "discretion" to "consider the motions to quash without further inquiring about whether each movant strictly complied with Local Rule 12.01(d)." (Doc. No. 275 at 9). The Court stands by that Order.

Second, the Court disagrees that it misapplied the Nixon specificity standard or applied it in an overly restrictive way. (See Doc. No. 296 at 2). It is important to remember that "one of the major purposes of the [Nixon] specificity requirement is to provide the subpoenaed party or other party having standing with enough knowledge about what documents are being requested so as to lodge any objections on relevancy or admissibility." United States v. Libby, 432 F. Supp. 2d 26 (D.D.C. 2006) (citation and internal quotation marks omitted). Defendant's broad Rule 17(c) demands for "any and all" documents or communications violate this basic purpose because he does not identify any *specific* documents that he is requesting.[1] See, e.g., United States v. Mills,

---

[1] Defendant filed a supplemental memorandum *ex parte* and under seal explaining why his subpoena requests seek *relevant* and *admissible* evidence. (Doc. No. 299). The Court reviewed this filing and appreciates defense counsel's efforts to provide this information, this filing is moot for present purposes because Defendant's requests fail to satisfy the Nixon *specificity* requirement. However, this filing also suggests that Defendant had more than a little information to make more specific requests in his subpoenas but failed to do so.

3

2019 WL 76869, at *5 (E.D. Mich. Jan. 2, 2019) (quashing Government's Rule 17(c) subpoena seeking "any and all records relating to" the Defendant as nonspecific under Nixon).

The Court also considered Defendant's request-by-request explanations for why he believes his subpoenas are sufficiently specific, (Doc. No. 296 at 16), but they do not alleviate the reasons expressed in the Court's Order.  As an initial matter, these explanations, at least in part, constitute new arguments, and new arguments "raised for the first time in a motion for reconsideration at the district court generally [are] forfeited."  United States v. Huntington Nat'l Bank, 574 F.3d 329, 331–32 (6th Cir. 2009).  Also, just because some requests included a general temporal limitation (e.g. "from January 1, 2016, to the present") or a subject matter limitation (e.g. "all entities in which you currently hold a business interest") does not mean, without more, that those requests meet the Nixon specificity standard.  These additional details about specificity also suggest that Defendant's subpoena requests were not sufficiently specific from the outset.  To the extent Defendant asserts that Nixon, or the Court's application of Nixon, makes it "nearly impossible for defendants to obtain relevant evidence," that seems to be a disagreement with the rule itself.  (See Doc. No. 296 at 2, 24–25).  It is not the role of this Court to second guess the Supreme Court's wisdom in creating the Nixon standard—a standard that, the Court notes, has remained largely undisturbed for more than half a century.  See United States v. Rajaratnam, 753 F. Supp. 2d 317, 320 n.1 (S.D.N.Y. 2011) (noting that "[t]he Court is unaware of any" decision, other than United States v. Tucker, 249 F.R.D. 58 (S.D.N.Y. 2008), "applying a test less restrictive than the Nixon test to a Rule 17(c) subpoena," but explaining why revisiting the issue could provide "great benefit to the rights of defendants to compulsory process").

Third, Defendant contends that "the Court's order confuses pretrial production with trial production," and that "[t]he Court can order the production of impeachment material before trial."

(Doc. No. 296 at 2, 26–27).  Although the Court is not entirely sure what Defendant means by this argument, it appears he is arguing that the Court's refusal to require pretrial production of impeachment material now "will inevitably slow down trial and prejudice [his] ability to confront the government's witnesses."  (Id. at 27).  It is true that the Court's Order quashed Rule 17(c) subpoenas seeking the production of documents *before* trial.  And some of the requests in those subpoenas sought impeachment materials which, under binding Supreme Court and Sixth Circuit precedent, generally are not proper targets of a Rule 17(c) subpoena.  Nixon, 418 U.S. at 701; United States v. Hughes, 895 F.2d 1135, 1146 (6th Cir. 1990).  Maybe "the Court could have required" otherwise, but the Court's refusal to require pretrial production of impeachment materials via Rule 17(c) subpoenas hardly constitutes clear error of law or manifest injustice.

Fourth, Defendant is correct that the Court did not specifically address the May 21, 2025 subpoena directed to Ron Janbakhsh ("Ron").  (See Doc. No. 190-7).  The Court appreciates Defendant bringing this oversight to the Court's attention.  But having considered the requests in that subpoena, the Court finds that the subpoena fails to satisfy the Nixon specificity requirement just like the other subpoenas that the Court discussed in its Order.  For example, Defendant's subpoena to Ron requests "any" or "all documents and communications" about various topics, (Doc. No. 190-7 at 6–7), which are the types of overly broad requests that courts routinely quash. See, e.g., United States v. Medinueta-Ibarro, 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013).  His subpoena to Ron also demands "all communications" with the United States Attorney Office, the Department of Justice, the Probation and Pretrial Services Office, (Doc. No. 190-7 at 7), which courts have found "plainly fail[]" under Nixon.  United States v. Menendez, 2024 WL 2801960, at *2 (S.D.N.Y. May 31, 2024).  It therefore appears that Defendant's Rule 17(c) subpoena to Ron, like the other subpoenas discussed in the Court's Order, contains requests that fail to specify "the

information contained or believed to be contained in the documents sought," which also makes it impossible for the Court to fully assess the relevance or admissibility of the requested documents. (See Doc. No. 275 at 15 (citations omitted)). Accordingly, the Court will grant the motion to quash the May 21, 2025 subpoena directed to Ron because it does not satisfy the Nixon standard.[2]

Fifth, Defendant argues, without legal authority, that "the Court should have modified the early return aspect of the subpoenas, rather than quash the subpoenas themselves." (Doc. No. 296 at 27). What Defendant fails to acknowledge, however, is that all of his subpoenas sought pretrial production and inspection of documents well before the July 22, 2025 trial date. (See Doc. Nos. 190-6; 190-7; 198-1; 229-1; 229-2; 208-1; 225-1; 226-1; 268-1; 269-2). Other than Defendant's general request in his response briefs, he did not explain how exactly the Court should take on the burdensome task of sifting through Defendant's nonspecific subpoena requests and picking out ones that may be required for at trial production. Even if the Court were required to engage in such a burdensome task, which it is not, the Court could not do so without inside knowledge about what evidence is relevant for Defendant's trial strategy. The Court avoided this impossible chore by quashing Defendant's Rule 17(c) subpoena for *pretrial* production, and there is nothing to reconsider about that decision.

For the foregoing reasons, Defendant's Motion for Reconsideration of Order Quashing Subpoenas (Doc. No. 296) is **GRANTED IN PART** and **DENIED IN PART**. The Motion to Quash filed by David Raybin and Ron Janbakhsh (Doc. No. 189) is **GRANTED** with respect to the Rule 17(c) subpoena directed to Ron Janbakhsh (Doc. No. 190-7). The Motion for Reconsideration is **DENIED** in all other respects.

---

[2] The Motion to Quash Trial Subpoena Directed to David Raybin (Doc. No. 191) remains under advisement.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE